**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**SHREVEPORT DIVISION**

| | |
|---|---|
| CORY ALLEN | CIVIL ACTION NO. 18-0420 |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| ROYAL TRUCKING CO., ET AL. | MAGISTRATE JUDGE HORNSBY |

**MEMORANDUM ORDER**

Before the Court is Plaintiff Cory Allen's ("Plaintiff") Daubert motion to exclude the testimony of Defendants Royal Trucking Co., Emmett Battle, and Cherokee Insurance Co.'s (collectively "Defendants") retained expert, William R. Scott. See Record Document 39. Defendants oppose the motion. See Record Document 49. For the reasons set forth below, Plaintiff's motion is hereby **DENIED**.

Federal Rule of Evidence 702 governs the admissibility of expert testimony. Rule 702 states that "a witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise" if all of the following elements are met:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. This list of elements comes from the seminal case of Daubert v. Merrell Dow Pharmaceuticals, Inc. and its progeny. 509 U.S. 579, 113 S. Ct. 2786 (1993). In Daubert, the Supreme Court stated that courts are required to serve as gatekeepers for

expert testimony, ensuring that such testimony is both reliable and relevant before it is admitted into evidence. See id. at 589, 113 S. Ct. at 2795.

Certain factors should be considered in determining whether a particular expert's opinions are reliable:

> (1) whether the expert's technique or theory can be or has been tested—that is, whether the expert's theory can be challenged in some objective sense, or whether it is instead simply a subjective, conclusory approach that cannot reasonably be assessed for reliability; (2) whether the technique or theory has been subject to peer review and publication; (3) the known or potential rate of error of the technique or theory when applied; (4) the existence and maintenance of standards and controls; and (5) whether the technique or theory has been generally accepted in the scientific community.

Fed. R. Evid. 702, advisory committee's note (2000) (citing Daubert, 509 U.S. at 593–94, 113 S. Ct. at 2796–97). This list of factors is non-exclusive, as the factors to be considered may vary depending upon the type of expert opinion at issue in a particular case. See Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 149–50, 119 S. Ct. 1167, 1175 (1999). Relevance of expert testimony is a question of "fit," i.e., whether the expert testimony in question is well-suited to the issues of a particular case such that it will help the jury in deciding these issues or in understanding evidence that is outside the average juror's ability to understand absent such help. Daubert, 509 U.S. at 591–92, 113 S. Ct. at 2795–96; see also In re Schooler, 725 F.3d 498, 514–15 (5th Cir. 2013).

Though the trial court must fulfill its role as gatekeeper in ensuring that all admitted expert testimony is both reliable and relevant, "the trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system." U.S. v. 14.38 Acres of Land, 80 F.3d 1074, 1078 (5th Cir. 1996). Thus, "[t]he rejection of expert testimony is the exception rather than the rule." Fed. R. Evid. 702, advisory committee's note (2000).

"Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." Daubert, 509 U.S. at 596, 113 S. Ct. at 2798. The proponent of an expert's testimony bears the burden of proving that it meets the requirements of Rule 702. See Moore v. Ashland Chem., Inc., 151 F. 3d 269, 276 (5th Cir. 1998). Whether these elements are met is a preliminary question for the district court to decide under Federal Rule of Evidence 104(a).

The instant matter arises from a train collision on January 2, 2018 in which Plaintiff, who was operating the locomotive, allegedly suffered serious injury to the lumbar region of his spine. See Record Document 119 at 5–6. Defendants retained and intend to offer Dr. Scott as an expert witness in the field of biomechanics to provide testimony as to whether the motion of Plaintiff's body during the collision could have caused his alleged injuries. See Record Document 49 at 5. In response, Plaintiff filed the instant Daubert motion based on several grounds, including, *inter alia*, that Dr. Scott is not qualified to render his opinions, his methodology and opinions are unreliable and based on insufficient facts, and his opinions are irrelevant. See Record Document 119 at 2.

Upon consideration of the record, the Court is satisfied that Dr. Scott is qualified as an expert by "knowledge, skill, experience, training, or education" as required by Rule 702. Dr. Scott holds a Ph.D. in mechanical engineering and, further, has authored numerous publications related to his field of study. See Record Document 49-2 at 1–2. He has also worked as a principal consultant in the fields of biomechanics and accident reconstruction since 1989 and has testified numerous times in the past several years.

See id. at 25–26, 30.[1] Under these circumstances, Dr. Scott possesses sufficient training, experience, and specialized knowledge to opine as to any aspect of the accident, including the effect that the force of the impact from the accident had on Plaintiff's lumbar region. Plaintiff's contention that Dr. Scott does not have sufficient experience in analyzing train collisions specifically does not go to admissibility, but rather credibility, and therefore is appropriate subject matter for cross-examination.

The Court also finds that Dr. Scott's opinions appear to be sufficiently reliable and based on sufficient facts and data. In reaching his opinions, he reviewed the accident report, images of the locomotive and accident scene, in addition to various depositions and relevant discovery. See Record Document 49-3 at 2–3. Furthermore, Dr. Scott relied on his engineering background, knowledge, and experience in assessing the locomotive event recorder data as part of his injury causation analysis. See Record Document 120 at 3–5. The Court finds that Dr. Scott's analysis and opinions are "sufficiently grounded in the methods and procedures of science," and, moreover, will assist the jury in determining the cause of Plaintiff's injuries. Finley, 2019 WL 4087552, at *3. Again, Plaintiff's concerns regarding Dr. Scott's failure to personally inspect the locomotive and the extent to which he examined other evidence go to the weight, rather than the admissibility, of Dr. Scott's opinions. Thus, the Court is persuaded that Dr. Scott's methodology and principles are scientifically sound and based on facts sufficient to satisfy Rule 702's reliability requirement.

---

[1] The Court notes that another court in this Circuit recently addressed proffered expert testimony by Dr. Scott and found him qualified to render an opinion as to many of the same issues present in this case. See Finley v. Vermeer Mfg. Co., No. 18-0192, 2019 WL 4087552, at *2–3 (W.D. Tex. July 10, 2019).

Accordingly, based on the foregoing reasons,

**IT IS ORDERED** that Plaintiff's <u>Daubert</u> motion to exclude the testimony of William R. Scott (Record Document 39) is **DENIED**.

**THUS DONE AND SIGNED**, in Shreveport, Louisiana, this 31st day of March, 2020.

_____
S. MAURICE HICKS, JR., CHIEF JUDGE
UNITED STATES DISTRICT COURT